UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LEAH JEAN ATKINSON,                :
                                   :
        Petitioner,                :
                                   :  PRISONER
    v.                             :  Case No. 3:05-CV-673(RNC)
                                   :
WILLIAM WILLINGHAM, KUMA DEBOO,    :
                                   :
        Respondents.[1]            :

RULING AND ORDER

Petitioner, an inmate at the Federal Correctional Institution in Danbury, Connecticut, has filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241 challenging seven disciplinary sanctions. She asks the Court to expunge the sanctions, which include loss of good conduct time credit. For reasons that follow, the petition is denied.

I.  Facts

In 2002, petitioner pleaded guilty in the U.S. District Court for the Western District of Kentucky to conspiracy to distribute cocaine and distribution of cocaine and was sentenced to 87 months' imprisonment. Until February 12, 2004, she was incarcerated at the Federal Medical Center in Lexington, Kentucky ("FMC Lexington"). She has been incarcerated at FCI Danbury since April 7, 2004. She challenges the results of seven

---

[1] The proper respondent in a petition for a writ of habeas corpus is the inmate's custodian. Kuma Deboo left her position as warden at FCI Danbury before this petition was filed. Accordingly, the claims against her are hereby dismissed.

disciplinary hearings conducted at FMC Lexington and FCI Danbury.

### A. Incident Report #1044055

On November 3, 2002, petitioner was instructed to enter a visual search room. Petitioner told the officer that she wanted another officer to search her. (Doc. #12, Ex. 1c § 11.) Petitioner was charged with refusing a direct order. During the investigation of the incident, she admitted refusing the order but explained that she thought the officer had improperly searched her an hour earlier. (Id. § 24.) The incident was referred to the Unit Disciplinary Committee ("UDC"). (Id. § 27.) Based on the investigation and petitioner's admission, the UDC found that she had committed the prohibited act and imposed a sanction of 180 days' loss of visiting privileges. (See id. §§ 17-20.) The sanctions were affirmed on appeal. (Doc. #12, Ex. 1dd.)

### B. Incident Report #1137703

On August 28, 2003, petitioner failed to report for her work assignment because she was sleeping in the recreation exercise room. (Doc. #12, Ex. 1d § 11.) She was charged with unexcused absence from work. Following an investigation during which she conceded the relevant conduct, the matter was referred to the UDC. (See id. §§ 24-27.) The UDC hearing was held on September 8, 2003, which was beyond the ordinary time frame because of staff shortages. (Id. § 19.) Notwithstanding petitioner's

explanation that her medication had made her sleepy, the UDC found her guilty of the prohibited act and imposed a sanction of 45 days' commissary restriction. (See id. §§ 17-20.)

C.  Incident Report #1139696

On September 4, 2003, a correctional officer found gum and coins in petitioner's bathrobe. (Doc. #12, Ex. 1e § 11.) She was charged with possession of unauthorized money and items. Petitioner denied any knowledge of the unauthorized items but admitted owning the bathrobe. (See id. §§ 11, 24.) Following a hearing, the UDC referred the matter to the Disciplinary Hearing Officer ("DHO") for another hearing because the indicated sanctions for the charged conduct exceeded what the UDC was authorized to impose. (See id. §§ 18-20.) Petitioner attended the DHO hearing with a staff representative on October 31, 2003. (See Doc. #12, Ex. 1h.) She claimed that the robe was a hand-me-down from another inmate. (See id. § III.B.) Relying on the written statement of the reporting officer, the DHO found that petitioner had committed the prohibited acts and imposed sanctions of 3 months' loss of commissary privileges and 13 days' disallowance of good conduct time for possession of unauthorized money and 3 months' loss of commissary privileges for possession of unauthorized items. (See id. §§ V-VI.)

D.  Incident Report #1151660

On October 11, 2003, an officer searching petitioner

3

suspected that she had hidden something in a body cavity because she was not standing in an upright position. (See Doc. #12, Ex. 1i § 11.) The officer told petitioner to stay seated while the officer temporarily left the room. (See id.) In that officer's absence, petitioner told another officer that the reporting officer was done with her and asked if she could leave. (See id.) She was charged with disobeying a direct order. Following a hearing on October 14, 2003, the UDC referred the matter to the DHO. (See id. §§ 18-20.) Petitioner attended the DHO hearing with a staff representative on October 31, 2003. (See Doc. #12, Ex. 1*l*.) She presented the testimony of three witnesses. (See id. § III.C.2.) The DHO did not find petitioner's testimony credible and concluded that she had taken advantage of the officer. (See id. § V.) The DHO imposed sanctions of 12 months' loss of visiting privileges (suspended pending 180 days' clear conduct) and 13 days' disallowance of good conduct time. (See id. § VI.)

### E. Incident Report #1159156

On November 1, 2003, petitioner received a visit despite having just been sanctioned with loss of visiting privileges. (See Doc. #12, Ex. 1m § 11.) Petitioner was charged with refusing programs. Following a hearing on November 6, 2003, the UDC referred the matter to the DHO. (See id. §§ 18-21.) Petitioner attended the DHO hearing with a staff representative

4

on December 9, 2003. (See Doc. #12, Ex. 1p.) Petitioner presented the testimony of two witnesses. (See id. § III.C.2.) The DHO found that petitioner had committed the prohibited act. Though acknowledging that staff were unaware of the sanction before the visit, the DHO concluded that petitioner was responsible for complying with the sanction even though there was no mechanism in place to ensure her compliance. (See id. § V.) The DHO imposed sanctions of 6 months' loss of commissary privileges, 6 months' loss of telephone privileges, 1 year's loss of visiting privileges, 20 days' restriction to quarters, 21 days' disallowance of good conduct time, 20 days' forfeiture of good conduct time not yet vested, and execution of the suspended sanction of 6 months' loss of visiting privileges. (See id. § VI.)

F. Incident Report #1212391

On December 9, 2003, petitioner was sanctioned with 6 months' loss of telephone privileges. On April 15, 2004, she dialed a telephone number in violation of this sanction. (See Doc. #12, Ex. 1s § 11.) She was charged with using the telephone for abuses other than criminal. Following a hearing on April 20, 2004, the UDC referred the matter to the DHO. (See id. §§ 18-20.) The DHO hearing was held on April 28, 2004. (See Doc. #12, Ex. 1v.) Petitioner declined the assistance of a staff representative. (See Doc. #12, Ex. 1t.) Petitioner admitted the

5

relevant conduct. (See Doc. #12, Ex. 1v § V.) The DHO sanctioned her with 20 days' disciplinary segregation, 90 days' loss of telephone privileges, and 27 days' disallowance of good conduct time. (See id. § VI.) The sanctions were affirmed on appeal. (See Doc. #12, Ex. 1gg.)

    G.    <u>Incident Report #1254100</u>

On August 23, 2004, a correctional officer discovered in petitioner's locker "a piece of plastic approximately 3 1/4[] inches in length, wrapped in grey tape which was fashioned as a handle, and the edge was sharpened to a point." (Doc. #12, Ex. 1w § 11.) Petitioner was charged with possessing a weapon. Petitioner explained that she used the object as a tape dispenser. (Id. § 24.) The UDC hearing was held on September 3, 2004, which was beyond the ordinary time frame because the incident report had been misplaced. (See id. at attach. mem.) The UDC referred the matter to the DHO. (See id. §§ 18-20.) The DHO hearing was held on September 15, 2004. (See Doc. #12, Ex. 1z.) Petitioner waived her right to a staff representative. (See Doc. #12, Ex. 1x.) Notwithstanding petitioner's explanation that the item was a tape dispenser, the DHO determined that petitioner had committed the charged act. (See Doc. #12, Ex. 1z § V.) The DHO imposed sanctions of 60 days' disciplinary segregation and 18 days' disallowance of good conduct time. (Id. § VI.) The sanctions were affirmed on appeal. (See Doc. #12,

6

Ex. 1ii.)

II. Discussion

"A writ of habeas corpus under [28 U.S.C.] § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001). Challenges to disciplinary sanctions such as loss of good time credits are properly brought under § 2241 because such sanctions "affect[] the fact or duration of the petitioner's custody." Id. (quoting McIntosh v. U.S. Parole Comm'n, 115 F.3d 809, 812 (10th Cir. 1997)). Petitioner challenges the disciplinary sanctions on the ground that they were imposed in violation of procedural due process. Respondent argues that petitioner has not exhausted her administrative remedies with regard to incident reports #1137703, #1139696, #1151600, and #1159156 and that she was not denied due process at the other disciplinary hearings.

    A.    Exhaustion of Administrative Remedies

Respondent argues that petitioner failed to exhaust her administrative remedies with regard to incident reports #1137703, #1139696, #1151600, and #1159156 because she did not submit timely appeals.[2] A federal inmate must exhaust her

---

[2] Respondent concedes that petitioner exhausted her administrative remedies with respect to the other incident reports.

administrative remedies before filing a petition for habeas relief under § 2241.  See id. at 634.  This exhaustion requirement may be excused upon a showing of cause and prejudice.  See id.

The Federal Bureau of Prisons Administrative Remedy Program is a four-step process.  First, the inmate must attempt to resolve the matter informally.  See 28 C.F.R. § 542.13(a).  If informal resolution is unsuccessful, the inmate must submit a written administrative remedy request to the appropriate official at her correctional institution.[3]  See id. § 542.14.  If the inmate is not satisfied with the official's response, she may submit an appeal to the appropriate Regional Director and, if still dissatisfied, a final appeal to the General Counsel.  See id. § 542.15(a).  The regulations set forth specific time limits within which appeals must be filed.  Extensions of time are permitted if the inmate can demonstrate a valid reason for the delay, such as an extended period in-transit from one facility to another during which she was separated from the documents needed to file the appeal or an extended period of time during which she was physically incapable of preparing the appeal.  See id. §§ 542.14(b), 542.15(a).

---

[3] An inmate appealing a DHO finding should appeal directly to the Regional Director, as opposed to submitting an appeal within her correctional institution.  See 28 C.F.R. § 542.14(d)(2).

Petitioner appealed incident reports #1137703, #1139696, #1151660, and #1159156 to the Mid-Atlantic Regional Office on April 23, 2004, after she had arrived at FCI Danbury. The appeals were rejected because, among other reasons, she had to submit the appeals to the Northeast Regional Office. (See Doc. #12, Ex. 1bb at 9-10, 12-13.) Petitioner submitted appeals to the Northeast Regional Office, but the appeals were properly rejected as untimely. (See Doc. #10 ¶¶ 5-8.) The Office informed petitioner that, if she had a valid reason for the delay, she could resubmit the appeals accompanied by documentation from correctional staff explaining the delay. (See id. ¶¶ 6-8.) In addition, the rejection stated that appeals of UDC sanctions (i.e., incident report #1137703) must first be submitted to the warden at petitioner's correctional institution. (See id. ¶ 5.)

Petitioner did not resubmit appeals for incident reports #1137703 or #1151660. (See id. ¶¶ 5-6.) She resubmitted appeals for incident reports #1139696 and #1159156, but the appeals were rejected for lack of staff documentation. (See id. ¶¶ 7-8.) She made no further attempt to appeal these incident reports.[4]

---

[4] On July 22, October 26, and November 20, 2004, petitioner submitted requests to the warden at FCI Danbury seeking an extension of time to submit the appeal for incident report #1159156. The first request was rejected because she had not yet sought informal resolution, and the second and third requests were rejected as untimely. (See Doc. #12, Ex. 1bb at 23, 27-28.) At no point did petitioner attempt to submit any documentation to

Petitioner explains that, upon her arrival at FCI Danbury, correctional staff assured her she would be able to appeal the incident reports for which deadlines passed while she was in transit. But petitioner offers no explanation for her failure to submit staff documentation of the delay, as required by the Northeast Regional Office. She repeatedly failed to follow the proper procedures to justify her delay and therefore abandoned her appeals. Petitioner has not demonstrated good cause for this failure. Accordingly, the petition is denied as to incident reports #1137703, #1139696, #1151660, and #1159156.

    B.    <u>Denial of Due Process</u>

Turning to incident reports #1044055, #1212391, and #1254100, petitioner argues that the disciplinary sanctions were imposed in violation of her procedural due process rights. Prisoners' liberty interests are implicated by disciplinary decisions that result "in an atypical and significant hardship . . . in relation to the ordinary incidents of prison life" or that "lead to the loss of good time credit." <u>Luna v. Pico</u>, 356 F.3d 481, 487 & n.3 (2d Cir. 2004) (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995)) (alteration in original). When a prisoner's good time credit is at stake, she must be afforded (1) written notice of the disciplinary charges; (2) the opportunity to call

---

the Northeast Regional Office, as required by its rejection of her appeal.

witnesses and present documentary evidence, as long as doing so will not undermine "institutional safety or correctional goals"; and (3) a written statement by the factfinder including the evidence relied upon and the reasons for the disciplinary sanctions.  See Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974).[5] In addition, a disciplinary decision revoking good time credit must be based on "some evidence in the record."  Superintendent v. Hill, 472 U.S. 445, 453-54 (1985).  The Second Circuit Court of Appeals has construed Hill to require "'reliable evidence' of the inmate's guilt."  Luna, 356 F.3d at 488 (quoting Taylor v. Rodriguez, 238 F.3d 188, 194 (2d Cir. 2001)).

Incident report #1044055 resulted only in the temporary loss of visiting privileges, which does not implicate a protected liberty interest.  See, e.g., Santos v. Bureau of Prisons, No. 1:05-CV-0008, 2006 WL 709509, at *2 (M.D. Pa. Mar. 20, 2006). However, incident reports #1212391 and #1254100 resulted in a loss of good time credit.  Accordingly, the Court must determine whether these sanctions were imposed in accordance with Wolff and Hill.  Petitioner alleges that she was "over-sanctioned" and that the disciplinary hearings violated her procedural due process rights.  She also argues that she was confined in the Special Housing Unit longer than was required under the sanctions.

---

[5] An inmate does not have a right to have an attorney present at a disciplinary hearing.  See Wolff, 418 U.S. at 569-70.

The Court treats petitioner's allegation that she was "over-sanctioned" as a claim that the sanctions were not based on reliable evidence. In each case, the DHO determined that petitioner had committed a prohibited offense based, in part, on her own statements. In reviewing incident report #1212391, the DHO relied on her admission that she dialed a telephone number while sanctioned with loss of telephone privileges. Similarly, concerning incident report #1254100, the DHO specifically cited petitioner's admission that she owned a sharp plastic object. Accordingly, the disciplinary sanctions are adequately supported.[6]

The sanctions were also imposed in accordance with the procedural due process rights laid out in Wolff. Petitioner was provided proper notice of the DHO hearings and testified at both hearings. She waived her right to a staff representative and did not ask to present any witnesses. In each case, the DHO promptly issued a written report summarizing the evidence on which the decisions were based and the reasons for the sanctions imposed.[7]

Finally, petitioner challenges her confinement in the

---

[6] Moreover, the sanctions were within the range of authorized sanctions for the prohibited acts. See 28 C.F.R. § 541.13 tbl. 3.

[7] Petitioner appears to argue that her rights were violated when the Bureau of Prisons extended the period in which it had to respond to her appeals or when it responded to her appeals after the deadline. This argument is without merit.

Special Housing Unit (SHU) beyond the specified term of disciplinary segregation. Petitioner was sanctioned with 20 days' confinement for incident report #1212391, but she was held in the SHU for 29 days. Similarly, she was sanctioned with 60 days' confinement for incident report #1254100, but she was held in the SHU for 79 days. She appears to suggest that her segregation was extended in retaliation for her filing grievances. This claim is not properly part of this habeas petition.

"The Supreme Court has left open the question of whether federal habeas corpus is available to prisoners who challenge decisions imposing restrictive conditions of confinement." Jenkins v. Haubert, 179 F.3d 19, 23 (2d Cir. 1999); see also Preiser v. Rodriquez, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making the custody illegal."). Thus, a prisoner in restrictive confinement may be able to file a petition for a writ of habeas corpus seeking release from that confinement. However, petitioner filed this petition long after her extended stays in the SHU.

III. Conclusion

For the foregoing reasons, the amended petition for writ of habeas corpus [Doc. #8] is hereby denied. The Clerk is directed

13

to enter judgment and close the case.

So ordered.

Dated at Hartford, Connecticut this 3rd day of March 2007.

```
                                      /s/
_____
                                  Robert N. Chatigny
                              United States District Judge
```